UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                                                  Case No. 6:10-cr-291-Orl-28GJK

LEAVITIS GOLPHIN III

_____

ORDER

Defendant Leavitis Golphin III is charged with felon in possession of a firearm, possession with intent to distribute marijuana, and possession of a firearm in furtherance of a drug trafficking crime. He filed a motion to suppress,[1] (Doc. 32), seeking to exclude from evidence items seized during a search made of a motel room he occupied.[2] Because Defendant has not alleged facts sufficient to establish a reasonable expectation of privacy in the motel room, he lacks standing to contest the search and seizure. Accordingly, the motion to suppress must be denied.

I. Background

Because Defendant has the burden of persuasion, he must allege sufficient facts showing that, by a preponderance of the evidence, he had a legitimate expectation of privacy protected under the Fourth Amendment. See United States v. Gomez, 770 F.2d 251, 253 (1st Cir. 1985) ("The burden of persuasion [on whether defendant has a

---

[1] Defendant moves to suppress his statements subsequently made to the search and seizure, but he did not allege any statements he made subsequent to the search and seizure in his motion.

[2] The Government has filed a response, (Doc. 34), opposing the motion to suppress.

legitimate expectation of privacy] is placed squarely on the movant" (citing Rakas v. Illinois, 439 U.S. 128, 140-150 (1978))); see also United States v. Cantley, 130 F.3d 1371, 1377 (10th Cir. 1997) (determining that movant must show by a preponderance of the evidence that he has a legitimate expectation of privacy); see also United States v. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000) ("[T]he Fourth Amendment protects an individual in those places where she can demonstrate a reasonable expectation of privacy against government intrusion." (citing Katz v. United States, 389 U.S. 347, 353 (1967))). Consequently, the Court will rely on the facts alleged by Defendant.

Defendant alleged that on May 25, 2010 law enforcement personnel "converged upon a motel . . . in response to a 'crime stoppers' tip." (Doc. 32 at 1-2). The tip stated that Levi occupied "room 149 of the motel and . . . he . . . possessed . . . marijuana and firearms." (Id. at 2). Upon discovering there was no room 149, law enforcement personnel approached the nearest room, room 147. (Id.). Detective Connelly knocked on the door but received no response. (Id.). After advising the clerk on duty of the situation, Connelly "again knocked upon the door . . . identifying himself as a law enforcement officer" and elaborating, "we are here on a drug complaint and . . . we would like to speak with you." (Id.). (quoting Detective Connelly). "There was no response." (Id.).

After locating the maintenance supervisor, Mr. Daniels, Agent Yisrael expressed "that smoke was coming from" room 147. (Id.). Mr. Daniels informed Agent Yisreal "that a person named 'Lee' was the only person occupying the room, though the room was not registered to 'Lee.'" (Id.). (internal quotations quoting Mr. Daniels). Defendant did not allege to whom room 147 was registered. Mr. Daniels told the agent "that housekeeping

had noticed a firearm in the room and that 'Lee', on occasion, smoked marijuana in the room" (Id. at 3). Mr. Daniels also told the agent that "'Lee', being an undesirable guest at the motel, was going to be evicted on the morrow." (Id.).

Defendant alleged that "Mr. Daniels unlocked room 147 of his own volition. The door . . . opened only two inches [because] it was secured by a chain. Agent Yisrael then . . . point[ed] his firearm through the small opening and ordered [Defendant], who was seated, to come open the door." (Id.). Defendant "responded . . . 'I'm on the bed with my hands up. Don't shoot,'" and then Defendant "opened the door the entire way." (Id.).

Finally, Defendant alleged that law enforcement personnel entered room 147, "observed suspected cannabis stems in an ashtray," and "secured [Defendant] with handcuffs." (Id.). Law enforcement personnel obtained a search warrant "predicated upon the marijuana stems espied in the ashtray" and the evidence was seized. (Id.).

## II. Analysis

"As a threshold inquiry, courts must determine whether a defendant has established standing to bring the motion to suppress by sufficiently alleging that he possessed a reasonable expectation of privacy in the area searched." United States v. Thompson, 171 F.App'x 823, 828-829 (11th Cir. 2006) (citing Cooper, 203 F.3d at 1284 (11th Cir. 2000)).

In Smith v. Maryland, the United States Supreme Court adopted a two-part inquiry to determine whether a person has a legitimate expectation of privacy safeguarded under the Fourth Amendment. 442 U.S. 735, 740 (1979). The two-part inquiry presents the Court with two questions: (1) "The first is whether the individual, by his conduct, has

-3-

'exhibited an actual (subjective) expectation of privacy,'" i.e., whether "the individual has shown that 'he seeks to preserve [something] as private.'" Id. (quoting Katz v. United States, 389 U.S. 347 at 361, 351) (Harlan, J., concurring). (2) "The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable,'" i.e., whether "the individual's expectation, viewed objectively, is 'justifiable' under the circumstances. Id. (quoting Katz, 389 at 361, 353) (internal quotations omitted). Both parts must be satisfied for the Court to find a legitimate expectation of privacy. The Fifth Circuit in United States v. Haydel, 649 F.2d 1152 (5th Cir. 1981),[3] provides factors that guide the two-part inquiry.

In Haydel, the court determined that "'property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated'" and that "[o]ther factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." 649 F.2d at 1154-55 (quoting United States v. Salvucci et. al., 448 U.S. 83, 92 (1980)).

Although Defendant satisfies part one, the subjective inquiry, of the two-part inquiry, he fails to satisfy part two, the objective inquiry. In the motion to suppress, (Doc.

---

[3]This decision is prior to September 30, 1981 and thus is binding precedent in the Eleventh Circuit. See Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that decisions by Fifth Circuit prior to September 30, 1981 are binding precedent in the Eleventh Circuit).

32), Defendant shows he seeks to preserve the contents of motel room 147 as private thereby demonstrating a subjective expectation of privacy. Defendant alleged that the door to room 147 was double locked - the second lock consisting of a chain only Defendant could disengage. By locking the door with a chain, Defendant evinced a belief that the contents in the room were private. See United States v. Murray, 53 V.I. 831, 843 (D. V.I. 2010) (concluding that defendant maintained subjective expectation of privacy in part because the property was "secured with a locking door"); Whiting v. State, 389 Md. 334, 358 ( 2005) (concluding that squatter had subjective expectation of privacy in part because he kept people out of the property "by means of a lock on the door for which only he had the key"); see also United States v. Speights, 557 F.2d 362, 363 (3d Cir. 1977) (concluding that a police officer demonstrated subjective expectation of privacy because the property was secured with a personal lock).

Although Defendant shows a subjective expectation of privacy, he fails to demonstrate that society would recognize his subjective expectation as reasonable. Defendant alleged that he occupied room 147, but he does not describe in what capacity he occupied the room. Thus, the quality of Defendant's occupancy status is unclear: Is Defendant a social guest, overnight guest, or trespasser? As a result, the factors relevant to the inquiry cannot be adequately assessed: was Defendant "legitimately on the premises," to what degree does he have a "possessory interest," and can he "exclude others" from the property. See Haydel, 649 F.2d at 1155. Without more, the quality of Defendant's occupancy status is indefinite, unspecific, and conjectural, and the Court cannot hold that society would recognize Defendant's subjective expectation as

reasonable. See Cooper, 203 F.3d at 1284 (11th Cir. 2000) ("'A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented....'" (quoting United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985))). As a consequence, Defendant fails to establish part two of the inquiry.

Accordingly, Defendant fails to demonstrate a reasonable expectation of privacy and so lacks standing to contest law enforcement personnel's search of motel room 147.

### III. Conclusion

For the above reasons above, Defendant's motion to suppress is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on this ___15___ day of June, 2011.

JOHN ANTOON II
United States District Judge

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Leavitis Golphin III